**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| BEECH INTERNATIONAL, LLC[1] | : | Case No. 24-14406 (AMC) |
| | : | |
| | : | Hearing Date: TBD |
| | : | Objection Deadline: TBD |
| Debtor | : | |

**DEBTOR'S MOTION FOR EXTENSION OF TIME UNDER 11 U.S.C. § 362(d)(3)**

Beech International, LLC (the "Debtor"), the Debtor and debtor-in-possession in the above captioned case, hereby files this motion (the "Motion") requesting entry of an Order extending the date under 11 U.S.C. § 362(d)(3) upon which the automatic stay terminates through July 10, 2025 (the "Motion"). In support of this Motion, the Debtor states as follows:

**JURISDICTION**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief requested in this Motion are 11 U.S.C. § 362(d)(3).

**BACKGROUND**

**A.    Bankruptcy Procedural Background**

4. On December 10, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the

---

[1] The last four digits of the Debtor's tax identification number are 7019.

"Bankruptcy Code"). The Debtor continues to operate its business and property as a debtor-in-possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or creditors' committee has been appointed in this chapter 11 case.

5. The factual background relating to the commencement of this chapter 11 case is set forth in detail in the *Affidavit of Kenneth Scott, CEO of the Debtor in Support of Motions* (the "Affidavit") [Docket No. 10], which is incorporated herein by reference.

6. As set forth more fully in the Affidavit, the Debtor is a Pennsylvania limited liability company, and its sole member is Beech Interplex, Inc., a Pennsylvania nonprofit corporation.

7. The Debtor owns and operates certain real and personal properly located at 1520-38 Cecil B. Moore Avenue, Philadelphia, PA, known as the International Apartments (collectively, the "Facility"), consisting of 106 student housing units and two commercial units.

8. The Debtor's primary source of revenue is monthly lease payments it receives from tenants in the Facility.

9. The Debtor commenced this chapter 11 case in order to obtain a breathing spell while it seeks to maximize the value to all of the Debtor's stakeholders.

10. The Facility is single asset real estate, as that term is defined in the Bankruptcy Code.

11. Pursuant to Section 362(d)(3) of the Bankruptcy Code, the automatic stay will terminate on March 10, 2025 unless **prior to March 10,** 2025, that termination date is extended by the Court for cause.

**B.   Pre-Petition Litigation Commenced By UMB Bank, N.A.**

12. Prior to the Petion Date, on October 18, 2024, UMB Bank, N.A. ("UMB") commenced a civil action against the Company by filing a complaint (the "Complaint") in the

United States District Court for the Eastern District of Pennsylvania, captioned *UMB Bank, National Association as Successor Trustee of the $17,280,000 Philadelphia Authority for Industrial Development Revenue Bond (International Apartment at Temple University) v. Beech International, LLC* (Civ. Act. No. 24-5555-TJS) asserting claims of payment default, among others, under the Loan Documents (as defined in the Complaint).

13. Further, on October 25, 2024, UMB filed a Motion for Appointment of Receiver.

14. As of the Petition Date, no receiver had been appointed nor had judgment been entered on the Complaint.

    **C.**    **Activity Since the Petition Date**

15. Since the Petition Date, the Debtor has (a) engaged in multiple hearings on the use of cash collateral and other "first day" hearings, (b) completed and filed its statement of financial affairs and schedules, (c) attended and completed its Section 341 meeting, (d) prepared and provided monthly budget variance reports to UMB, and (e) actively engaged in discussions with the Philadelphia Housing Authority ("PHA") UMB, Temple University and regarding possible exit options.

16. Among the exit options considered by the Debtor were (a) reorganization pursuant to a plan that would reduce its liabilities and pay them over time, and (b) sale of the Facility.

17. In connection with the possible sale of the Facility, the Debtor had discussions with PHA and Temple University.

18. Immediately prior to the Petition Date, the Debtor received a non-binding written offer from PHA to purchase the Facility for $9,950,000.[2] PHA has advised the Debtor that its offer was based on an appraisal that stated a value less than $9,950,000.

---

[2] The PHA offer was provided to UMB Bank shortly after the Petition Date and was referenced in its objection to the Debtor's motion to use cash collateral.

3

19. PHA has advised the Debtor that, on a non-binding basis, it remains interested in acquiring the Facility.

20. Since the Petition Date, the Debtor has also received a non-binding written offer for the Facility from Temple University. However, the amount offered by Temple is significantly less than the offer from PHA.

21. Prior to making its offer, Temple commissioned a comprehensive appraisal of the Facility from a national appraisal firm. That appraisal valued the Facility at significantly less than the amount offered by PHA. With the permission of Temple, that appraisal has been shared with UMB.

22. Given the location of the Facility, the Debtor believes that Temple and PHA are the most likely buyers. Further, given the Temple appraisal, the Temple offer and the Debtor's general knowledge of real estate values for buildings like the Facility in the area where the Facility is located, the Debtor believes that the amount of the PHA offer is fair.

23. In connection with the possible exit option based on a plan, the Debtors considered that their current occupancy rate, less than 50%, would not be sufficient to generate enough excess cash to fund distributions to creditors that would approach the likely amounts available if the Facility were sold. The Debtor considered the feasibility of projecting enough increased occupancy to cause a plan to be competitive with a sale and concluded that, while possible, there would be some significant uncertainties.

24. Having considered its options, the Debtor has concluded that it should pursue sale of the Facility to PHA under Section 363 of the Bankruptcy Code. However, there are several

02/13/2025 SL1 2631375v3 120136.00001

complicating factors regarding a sale to PHA that render it impossible to close a sale by March 10, 2025.[3]

25. Ideally the Debtor would like the sale to PHA to be supported by UMB and the bondholders for whom it serves as indenture trustee. UMB alleges that it holds a perfected lien (the "UMB Lien") on the Debtor's real estate and fixtures pursuant to a mortgage filed in 2010 securing debt in excess of $15,000,000.

26. Approximately two weeks ago, the Debtor informed UMB that the Debtor had chosen the sale to PHA option. That communication has resulted in the start of negotiations between the Debtor and UMB regarding an amount that UMB would accept from any such sale in return for its support.

27. The amount currently being sought by UMB for its support is significantly in excess of the amount that would be generated by the PHA sale. However, there are a number of ways that gap may be narrowed or eliminated assuming the parties are afforded some time to negotiate. In addition to the obvious possibilities (PHA could increase its offer and UMB could reduce its demand, both of which the Debtor is actively pursuing), there is another possible opportunity.

28. The Facility is subject to a lien (the "City Tax Lien") for unpaid real estate taxes owed to the City of Philadelphia (the "City") totaling about $1,300,000. While the Debtor has challenged the City Tax Lien, its challenge was rejected by the Philadelphia Court of Common Pleas and is currently on appeal to the Commonwealth Court.[4]

---

[3] The Debtor could propose a plan by March 10, 2025, that would effect a sale of the Facility post-effective date. The Debtor believes that such a plan would have a reasonable possibility of being confirmed within a reasonable time and, so, would prevent the termination of the automatic stay on March 10, 2025 notwithstanding the lack of a closing by that date. However, a sale under Section 363 of the Bankruptcy Code would be a more cost-effective way of accomplishing the transfer of the Facility. And that possibility can only be preserved by extending the termination date of the automatic stay for cause.

[4] The Debtor has also challenged the current assessment of the Facility.

29. Separate and apart from the legal challenge, the Debtor has been in discussions with the City regarding a possible compromise of some or all of the City Tax Lien in connection with a sale of the Facility to PHA and withdrawal of the Commonwealth Court appeal.

30. Should the City Tax Lien survive, it would be senior in priority to the UMB Lien and paid ahead of UMB from the proceeds of any sale. Conversely, should the City Tax Lien be compromised, assuming the validity of the UMB Lien, there would be a dollar-for-dollar benefit to UMB and the bondholders.

31. While there is no certainty that the discussions between the Debtor and the City will result in a voluntary compromise, it is also true that sale of the Facility to PHA could result in a substantial benefit to the City and, as a result, the Debtor believes that there is a real possibility that the City might agree to a compromise of the City Tax Lien in connection with a sale to PHA. However, the negotiation of any such compromise will take some time.

32. In addition to the need for time to attempt to negotiate with the City and to obtain UMB's consent, there is also a need for time to accommodate a contracting constraint that applies to PHA.

33. The Debtor is advised that, before PHA can execute a binding sale agreement, (a) PHA needs to obtain a Phase 1 environmental report on the Facility, (b) the Phase 1 and certain other documentation needs to be submitted to the U.S. Department of Housing and Urban Development ("HUD"), and (c) HUD has to approve the transaction.

34. PHA ordered the Phase 1 environmental report on February 13, 2025. It is the Debtor's understanding that it typically takes about five weeks for PHA to obtain results of Phase I studies.[5]

---

[5] It should be noted that the Debtor obtained a Phase 1 environmental report in 2023. That report did not disclose any significant environmental issues and has been shared with PHA. While the 2023 Phase 1 does not eliminate the

**RELIEF REQUESTED**

35. Cause exists to extend the date under 11 U.S.C. § 362(d)(3) when the automatic stay terminates through July 10, 2025, without prejudice to requests for additional extensions.

36. The best exit option for the Debtor's estate and its creditors is a sale to PHA. To that end, the Debtor is in active negotiations with (a) PHA for the sale of the Facility, (b) the City for compromise of the City Tax Lien, and (c) UMB regarding conditions to its consent to the sale to PHA. However, PHA needs time for the regulatory process to be followed. And the negotiations with PHA, the City and UMB will take some time. In the meantime, the Debtor is maintaining the Facility

37. It is in the best interest of all creditors of the estate to allow the Debtor some additional time to seek to effect the sale of the Facility to PHA, ideally with the consent of UMB Bank.

**NOTICE**

38. This Motion has been provided to (i) the Office of the United States Trustee; (ii) counsel for UMB Bank, N.A.; (iii) UMB Bank, N.A.; (iv) PIDC Local Development Corporation; (v) the Commonwealth of Pennsylvania Department of Revenue; (vi) all local taxing authorities; (vii) the Internal Revenue Service; (viii) the Utility Companies; (ix) PHA; (x) Temple University; (xi) any party requesting notice pursuant to Bankruptcy Rule 2002; and (xii) all creditors of the Debtor. The Debtor submits that no other or further notice need be provided.

**EXPEDITED RELIEF**

39. Due to the exigent circumstances of this case and the upcoming deadline under 11 U.S.C. § 362(d)(3), the Debtor has filed contemporaneously herewith a motion requesting the

---

need for a new Phase 1, the fact that the 2023 Phase 1 exists gives the Debtor comfort that the Phase 1 ordered by PHA will be satisfactory.

7

Court enter an order scheduling an expedited hearing and shortening time (the "Motion to Expedite") on the relief requested herein and setting a hearing on the Motion **on or before February 28, 2025**.

## CONCLUSION

WHEREFORE, the Debtor respectfully request the entry of an order (i) granting the Debtor's request to extend the termination date of the automatic stay under 11 U.S.C. § 362(d)(3) through July 10, 2025 for "cause" without prejudice to requests for additional extensions; and (ii) granting the Debtor such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: February 14, 2025           **STEVENS & LEE, P.C.**

/s/ *Robert Lapowsky*
Robert Lapowsky
Jason C. Manfrey
620 Freedom Business Center, Suite 200
King of Prussia, PA 19406
Telephone (215) 751-2866
Facsimile (610) 371-7958
Robert.lapowsky@stevenslee.com
Jason.manfrey@stevenslee.com

*Counsel to the Debtor*